Morning, Your Honors. Gary Montaneri on behalf of the appellant, U.S. Specialty Insurance Company. I would like to reserve three minutes for rebuttal, please. Your Honors, we can go right into Exclusion 2G, which we contend is really the only potentially operative exclusion. And, of course, exclusions are construed against the insurer, and the insurer bears the burden of proof on exclusions. First sentence of Exclusion 2G talks about excluding bodily injury or property damage arising out of the ownership, maintenance, use, or entrustment to others of any aircraft, auto, or watercraft. I'd just like to direct the Court to that. They're talking about three things there, auto, watercraft, aircraft. Owned or operated by or lease-rented or loaned to any insured. As we pointed out in the moving papers or in our brief, the pilot, Robert Lewis, was an employee of CAI. However, it is clear, we contend, that he is not an insured under the definition of insured in the policy. The policy under Section Roman numeral 2, Part 2, A3, defines an insured to include an employee, but then it excludes out that definition of an insured for property damage to property occupied by the employee. There can be no dispute that this complaint seeks a recovery for property damage to the aircraft occupied by Mr. Lewis. Therefore, he is not an insured. Therefore, there can be no exclusion of coverage under the first sentence. Just to briefly try to address this, there's been some contention that, well, he was piloting the aircraft for CAI. He was an employee of the insured. He was an employee of CAI. And that, therefore, you can use the doctrine of respondean superior to support this position. We've cited to the DART industry cases a Ninth Circuit decision which says you really can't do that because the doctrine of respondean superior for purposes of assessing tort liability is different than an analysis of indemnity under insurance policy. So this first sentence is not operative. The second sentence... There's no question that his employer maintained the aircraft. That is correct. No question the aircraft was operated by his employer. Yes, there's a significant claim to it. So that's what you're saying, because it was operated by him. It wasn't operated by his employer. Well, it depends on... Is that what you're arguing? It depends on the definition of operation. We've pointed out, if I just may, Your Honor, the second sentence, which is operated on behalf of, and that seems to be the crux of this appeal, note that it is only with respect to aircraft. It is not with respect to auto or watercraft. We argue... Well, do you agree with me then, and I'll let you go on, that the employer is, in fact, an insured? The employer, C-A-I, is an insured, yes. All right, so we're really only focusing in on the operated by. Operated by, which is defined to include operation. Note that it's not operated, it's operation on behalf of any insured. We believe, especially since this is an aviation policy, and this is specifically referenced to aircraft, that a reasonable interpretation is found in Federal Aviation Regulation 1.1, which is also 14 CFR 1.1, and that defines operate with respect to an aircraft to, in essence, say, someone who used, caused to use, or authorized to use the aircraft, and it includes piloting. So even under that definition, operate an aircraft can refer to piloting the aircraft, or it can refer to the entity that used, caused to use, or authorized to use the airplane. That is why, in this particular case, National Transportation Safety Board, who is charged by the United States government with investigating aviation accidents, listed the operator as the owner, R-H-B-J-M-J. They did not list the operator as Robert Lewis. They did not list the operator as Championship Aviation. I gather that your point is that if, let's say I'm about to board an American Airlines flight, and, say, they're short on pilots, and they grab a pilot from Southwest and say, hey, can you please fly this plane, the plane is still being operated on behalf of the airline. That is correct. That is correct, and frequently, Your Honor, you'll even see that where we'll talk about, this is American Flight 247 operated by SkyWest, for example. That comes down to that 1.1, use, caused to use, authorized to use. This was what's called a Part 91 flight for the business and pleasure of the owner, R-H-B-J-M-J. This was not a Part 135, what's called an air taxi flight, which, in that case, the CAI then would have been the operator because only CAI had the Part 135 certificate. So it is our position that the term operation, on behalf of, the logical inference is it refers to the entity that used, caused to use, or authorized to use, in this case, the owner, R-H-B-J-M-J. This operation was on behalf of the owner. The owner is not any insured, so the second part of Exclusion 2G does not apply. Wow. Can I ask you a slightly different question? Certainly. Just let me get this straight in my mind. I guess your position is that it doesn't matter what the actual cause of the accident was? In other words, I think in the complaint it's alleged either pilot error or negligent maintenance. And do we not, we don't need to know the answer to that to figure out that? Well, our position, Your Honor, is that because XL denied a defense in indemnity, that they cannot come back and relitigate the underlying action. We allege, among piloting issues, we allege negligent inspection, negligent maintenance, negligent repair. And as we pointed out, this airplane hit trees at an altitude of 25 feet, three-quarters of a mile from the end of the runway, and the propeller position was found near what's called the feather position, which is very low thrust from the propeller. So our position is this could easily be a case caused by negligent inspection, which was the responsibility of CAI. It could be done by negligent repair. Okay. Let's assume that it was, let's assume pilot error, it was conclusively determined by whoever, whoever investigates these things that pilot error was not the cause, that it had something to do with the inspection or maintenance of the aircraft by CAI. Would the, are we still going to be confronted with the exact same set of issues, or does the case completely change in that scenario? Well, you're going to be confronted by the same issue according to XL, and that's what's a little bit problematic to me about their interpretation. They're going to say we don't care what the cause was, as long as this was piloted by Robert Lewis, who is an employee of CAI, coverage is excluded. So that would mean if you follow that logically, then anything that was done on that aircraft, maintenance, repair, anything, is excluded, just because Robert Lewis was the pilot. That's what I don't understand. What was this policy covering in terms of the risk? I assume it was to cover the aviation operations of CAI. Well, that's correct. That's correct. If that was the sole cause of the accident, why would it matter whether they stuck an employee of theirs in the pilot seat? Well, there would be some significant illusory coverage issues, so to speak, and that was one of the problems I had with the decision of the district court, where the judge seemed to equate, oh, they got some kind of benefit out of it, so therefore it's, quote, on behalf of. Well, CAI receives a benefit from every airplane they work on, all right? They're either going to be managing it or operating it or inspecting it or maintaining it. I mean, they're in business to earn money, so if the issue is are they going to earn a buck out of it, then everything that they do is excluded and the policy is illusory. I would also like to point out that the term operate is not defined in this policy. It would have been an easy thing for the insurer, for example, if they wanted the term operate to mean piloting, they could have easily defined the term operate to include piloting. At a very minimum. But if use does equal operation and loading and unloading, right? Use includes operation and loading and unloading. Loading or unloading. Correct. And operated by includes operation on behalf of any insured. That is correct. That's right in the policy. That is correct, Your Honor. So if it's on behalf of any insured operated by, then does that clog your argument just a little? Well, it doesn't because you've got to look at the term. You've got to consider the term operation on behalf of any insured. And then you've got to go back to what's an operation. And, again, you know, the classic definition of an ambiguity is, is there more than one reasonable interpretation? Well, if you look at FAR 1.1, a very reasonable interpretation is operation is use, cause to use, or authorize to use. And, again, to me a very critical element in this case is that the NTSB defined the operator to be RHBJMJ. So if you go by that definition, then this was a, quote, operation on behalf of RHBJMJ. And they're not an insured. So, therefore, this policy language does not exclude coverage. But, on the other hand, CH agreed to store, manage, inspect, and maintain and provide properly trained pilots who were familiar with the aircraft, the instruments, and who could comply with the FAA regulations, correct? CAI, that was a commitment of CAI. And yet that, in your mind, is not operation. In the context of this, it is not operation. Operating is, by definition of 1.1, which is a reasonable definition, either flying it or authorizing the flight of it, basically. And even those two definitions, if you say we can pick one or the other, then applying one of those, in essence, could create an ambiguity. And it's a simple thing. If the insurer wanted to alleviate any ambiguities with respect to aviation, they could have easily defined operating in the policy. I'll reserve the rest for rebuttal. Thank you. May it please the Court, John Hanson on behalf of XL Specialty Insurance Company. This is a case of insurance policy construction, pure and simple. I believe we're sorted out on Mr. Lewis being an employee, and I believe we're sorted out on the issue of Mr. Lewis having been provided by Championship  Basic rules of insurance policy construction remind us that when terms appear that have an ordinary and plain meaning, we use them. We don't interpret words in an insurance policy according to a technical or special definition unless and until there's some indication in the policy that that's warranted. There is nothing in Exclusion 2G that points us in the direction of, you have to know what FAR 1.1 means before this policy would make sense to you. You look, you read the exclusion, and the exclusion says, operated by also includes operation on behalf of any insured. Now, when I read the appellant's brief, they argue that operation means physically manipulating the controls of the aircraft. Clearly, there are two people in the aircraft. One of them is described as an occupant. One is the pilot, Mr. Lewis. He is operating that aircraft. To say that operation does not mean operation, but rather it means some FAA-approved, limited narrow definition. It's not warranted by basic rules of insurance policy construction. Well, but I guess I would say that this clause is ambiguous, and our California case law is pretty clear that ambiguities get resolved against your client, right? If the policy is ambiguous, then the next step is to look to see whether or not the, what was the insurer's belief that the insured reasonably expected the policy to provide. What we have here is anyone who is reading these words are going to say, was it operated by? Yes. To say, well, there is a special technical definition that's over there in the FARs, that doesn't create an ambiguity. Operation may include that term. I will tell you just reading this, what I took from this, not being an aviation insurance specialist by any means, I took this exclusion to say with respect to aircraft, we're going to cover you for whatever aviation operations you normally do, whether it's maintaining the hangar, servicing aircraft, whatever. But if bodily injury or property damages arises out of operation of your own planes, if you lease a plane and you start flying it or if you own a plane, if the plane belongs to you, we're not covering that. We will cover damage to other people's planes that you're working on, that's fine, because that's within the scope of the risk we're willing to take on. But if it's your plane, broadly defined, leased, operated by, et cetera, that's excluded. And here, I just don't read this as the operation on behalf of is covering this case at all. Clearly, the aircraft is being operated on behalf of the owner of the plane. So that's to me why it's ambiguous. That's how I would have read it if I were the insured, unless you have some special definition that everybody in the aviation industry knows about that contradicts that. Absolutely not. And with respect, Your Honor, I think that it's the court that's suggesting this specialized definition. I don't know that the term operation is necessarily limited to, and frankly, I don't believe it is necessarily limited to operated by, meaning that it has to be on behalf of the owner of the aircraft. But look at the other terms that are, you know, the company that the term keeps, right? It's all talking about if it's your plane. So if you own it, if you lease it, if you rent it, or if it's been loaned to you, the insured, we're not covering that. So with that group of terms, I see operated by meaning, you know, if it's your plane, right? We're not covering stuff that you do with your own planes. We'll cover damage that occurs to other people's planes that you're working on, but not if it's your plane. Your Honor, I think that would make sense if the term operated by was not included. Under the court's view of the exclusion, and I see where you're going, owned, leased, rented, or loaned to would cover that. You don't need operated by if that's what this clause is intended to do. Operated by is an addition. Except that, as your opponent points out, again, just try to help me out. In the aviation industry, it sounds like operated by can encompass, you know, it's maybe you don't physically own the plane, but you're running the show. I don't know how else you would acquire it other than leasing it, renting it, loaning it, or owning it, but they wanted to be sure that, hey, we're not leaving any stone unturned. If there's some way that this is your plane, you're the one who has authorized it to take off, and you're in charge of all that, we're not covering that, however it comes about. That's how, again, how I read it, but you tell me why that's wrong. Because, again, and I think probably one of the problems that we have here is that counsel has referred to FARs and the NTSB. This is a CGL policy. This is a commercial general liability policy. The fact that the word aviation is tacked onto the front of it to make it an aviation commercial general liability policy only indicates that that's the type of business that is being written. What we have here is an exclusion that is fairly common throughout the insurance industry, and it's not limited to airlines, airports, and FBO, fixed base operators, who run airplanes out of their shops. This is a fairly standard exclusion that's going to appear across the board, and that by itself should indicate to the court that this term, operation or operated by, is not intended in a technical sense because it is used throughout the industry. I do think that when you get to, and I think it's established in the brief that operated by means physically manipulated because I think that argument is made by the appellant. So when you get to on behalf of, we've given the court the Madden v. Cowan case, securities case, but the court there was involved in statutory construction, which is basically the same initial process that this court will go through in construing the insurance policy on behalf of means in the interest of, for the benefit of, or as the representative of. This was a contract that Championship Aviation undertook to provide piloting to RHB, and they said, on this day, we are providing you Mr. Lewis. He is our representative. He is, sorry. Can I ask a question, same question I asked your opposing counsel here. So we don't need to know the cause of the accident to figure out whether this exclusion applies? No. This, the exclusion applies, and you'll read the exclusion. It does not say bodily injury or property damage caused. It says bodily injury or property damage arising out of. And the way that the courts have construed this language is if, in the chain of causation, this accident arose out of the operation of the aircraft by or on behalf of an insured, the exclusion applies. So it may be that at some point down the line, a finding might have been made somewhere, well, all right, it was a mechanic who misapplied a part. The actual crash itself arose out of the operation by a pilot acting on behalf of the insured. And I think that one of the things, it's mentioned briefly. Can I just stop you? Sure. If that's your position, then I think my reading of the clause makes all the more sense, that we're just excluding stuff that happens with your planes. Because if the main insurance risk that the insurer is taking on here is, you know, if you negligently maintain a plane and it takes off and crashes, we're going to cover property damage to the plane there. Why would it matter, then, if they provided the pilot? I see the issue. I think one of the things that has to be pointed out here is that there are non-owned aircraft policies. It's a specie of insurance policy that exists to cover this risk. It is specifically designed to provide coverage to an insured who is flying somebody else's airplane. Whether or not Championship had that policy or purchased that policy is an issue that's outside this court. But that coverage exists. And because that coverage exists, this policy is not covering it. Counsel alluded to whether or not this provides illusory coverage, and it does not. As we said before, this is a commercial general liability policy that applies to an aviation operation. Trip and falls. Part falls from the shelf, lands on someone's head. If Mr. Lewis had been not an employee and had been driving a truck and crashed into someone. All of those are covered risks under this policy. What is not covered under this policy is the situation where the insured is flying somebody else's plane on behalf of the insured. Because there's no policy for that. So what I would suggest to the court is that having established employment and the contract, having established operation on behalf of operation, and taking the court's questions and concerns in mind, operation is defined in their brief as physically physically manipulated controls. I'm paraphrasing. As long as we find that it was on behalf of Championship, I think that the exclusion has to be found to apply as a matter of law. With the court. Yeah. OK. Well, what about my American Airlines hypothetical? That just seems to operation on behalf of doesn't seem to me to be the best language for you. The operated by seems far better just by itself. Well, I think it's simply a matter of of the isn't isn't an aircraft always being operated on behalf of its owner? Well, who else would be? I mean, I if I own the plane and I say, hey, I want you to fly this for me. Why isn't it being operated on my behalf? That's not being operated on the pilot's behalf. I think one of the things that I would that I would respond there, Your Honor, is I think it may be a false choice. Is there a reason under this policy language why operation has to be limited to one entity? And I would direct the court or ask the court in the State Farm versus Keenan case that we said in our brief, there is a fairly long discussion of a Boeing case from Washington that and I've forgotten the name, but it is right inside the Keenan case where the court makes clear that under the circumstances, although the flight may have been have been operated on behalf of the government, government who was it was a big case, they were trying to decide whether or not the aircraft was to be accepted by the government. So it was being flown for a test. And during the test, there was a loss of some sort. And the operation by matter came up. And basically, they said, yeah, just because Boeing wasn't the purchaser, you can have more than one operator. And I don't think that there's anything in this policy language that requires this court to say that, well, a flight is only operated on one person's behalf. I don't know why that would be the case. Suppose that the owner of the flight has chartered it. Is it being flown? Is it being operated on behalf of the owner or on behalf of the charterer? Suppose that it's being – suppose it's a life flight. Is that being flown on behalf of the – operated on behalf of the owner or the patient? The one thing we know, it's not being operated on behalf of the employer of the person – of the company that supplies the pilot in any of those scenarios you just described. I'm with you that maybe there could be more than one person on whose behalf it's being operated, but it's not on behalf of the company who's supplying the pilot. If on behalf of means in the interest of, as a representative of, or for the benefit of, then yes, it is. Because, first of all – Pursuant to the agreement of. Correct. The contract required Championship to provide the pilot. The pilot was being provided as the representative of Championship. And based on there, I think it's clear. Or at least to me, and I understand that the court's trouble with it. But I think it's crystal clear that it could be operated on behalf of more than one person and was in this instance. If – questions or – thank you for your time. I appreciate it. Thank you. Let's see. I think you have some time left. I hope so, Your Honor. Thank you. Two and a half minutes. Three, just about. I just want to address a few things that were said. Justice Watford, your observation is very keen. That this particular exclusion is really designed to address aircraft that, if it belongs to you, we don't cover it. And let me tell you the reason for that. Because this particular policy is, as counsel indicated, they call it a commercial general liability policy. But it's designed to cover things like completed operations, which is maintenance, repair, and so forth and so on. If someone owns an aircraft, there's a separate policy that covers that. And it's called an aircraft haul-in liability policy. And that is precisely the reason and the basis for that exclusion. I will tell you that you're absolutely correct. The reason that is in there is, basically, if you own this airplane, you're supposed to have it scheduled under an aircraft haul-in liability policy. And, in fact, that was the holding in State Farm versus Kenan, which counsel has alluded to. The other thing that I thought was interesting is counsel said, well, you know, if there's an ambiguity, then we go to the insured's reasonable expectations. There is absolutely nothing in this record explaining the expectations of CHAMPIONSHIP Aviation. There is not a declaration. There is not a deposition. There is nothing from CHAMPIONSHIP Aviation, for example, a declaration from an officer director saying I had this expectation, I had that expectation. Well, but I don't know whether that helps you. Because in those situations, if I were on the district court, I would not suggest that I would expect the appellate court to decide the issue. I'd expect the appellate court to send it back and take some evidence. Well, I – I mean, I know where you're going. But, I mean, the only time I know of that the insurance company has the benefit or loses the benefit of the language or is construed against them is when the language is so ambiguous that nothing could be said by those who are coming in to talk to the court about what it said would have any effect. So we would go back and find out, well, then you're going to have another hearing. I don't know that that helps you win. Well, and I understand what you're saying, Your Honor. I think the rules of interpretation, first of all, in ambiguity, obviously is construed against the insurer. I understand that. And the only – you know, if in fact there are two reasonable interpretations, that's an ambiguity. And in fact – Well, I understand what you're saying there. But, again, and I'm not a California lawyer, so I wouldn't be happy to listen to you who are. But in Idaho, if there's an ambiguity, we're not necessarily construing it against the insurance company unless and until we have the opportunity to hear from those who put the contract together. Well, I hear what you're saying, Your Honor. I mean, there's no ambiguity if those who put the contract together both agree to one interpretation. There is, however, if both of those who are putting it together have a different interpretation. Then at that point, the insurance company loses. Well, I'm not – my time is over, and I'm not so sure I agree with all those rules of interpretation. But thank you. All right. Thank you. Thank you both for your argument. I appreciate it. Case 12-56164 is now submitted. And argument for today is adjourned. Thank you both for your good argument. Thank you, Your Honor. I very much appreciated both arguments. Thank you. Pleasure to sit on the Court. Thank you. Pleasure to have you appear and help us do the right thing, both of you. Thank you very much. Thank you. This point of the session stands adjourned.
judges: Farris, Smith, Watford